IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW W. HOWARD,

                    Plaintiff,

      v.                                     1:10-cv-1630-WSD

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
GMAC MORTGAGE, LLC,
E-TRADE FINANCIAL, and
E-TRADE SAVINGS BANK,

                    Defendants.

## OPINION AND ORDER

This matter is before the Court on Matthew W. Howard's ("Plaintiff" or "Howard") Motion for Reconsideration [39] of the Court's September 12, 2011, Order [37] granting summary judgment for Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), GMAC Mortgage, LLC ("GMAC"), E-Trade Financial and E-Trade Savings Bank (together, "E-Trade") (collectively, "Defendants").

## I.    BACKGROUND

This action arises from a foreclosure on real property following Plaintiff's default on the mortgage loan secured by the property. Plaintiff alleges claims for

wrongful foreclosure and fraud against the entities that held and serviced Plaintiff's mortgage loan and security deed.

    A.    <u>The Note, Security Instrument and Foreclosure</u>

On January 19, 2005, Matthew Howard obtained a loan from Quicken Loans Inc. ("Quicken Loans") in the amount of $132,000.00 and executed a promissory note ("Note"), promising to repay the loan to "Lender."  [31.13].  The Note defined "Lender" as Quicken Loans.  <u>Id.</u>  The Note also stated that Lender may transfer the Note, and Lender, or anyone who takes the Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."  <u>Id.</u>  The Note provides:

> In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.

<u>Id.</u> at 4.  At some point, Quicken Loans endorsed the Note to E-Trade Bank and E-Trade Bank thus became the Note Holder.  <u>Id.</u> at 5.[1]

On January 19, 2005, Howard also executed a Security Deed.  [31.4].  The Security Deed and its accompanying Riders are called the "Security Instrument." The Security Instrument states that Howard is the "Borrower" and the "grantor,"

---

[1]  It appears that, at some other point, E-Trade Bank endorsed the Note in blank. <u>Id.</u>

and MERS is the grantee "solely as a nominee for Lender and Lender's successors

and assigns." Id.  The "Lender" is Quicken Loans.  The Security Instrument

provides:

> TRANSFER OF RIGHTS IN THE PROPERTY.  This Security
> Instrument secures to Lender: (i) the repayment of the Loan, and all
> renewals, extensions and modifications of the Note; and (ii) the
> performance of Borrower's covenants and agreements under this
> Security Instrument and the Note.  For this purpose, Borrower does
> hereby grant and convey to MERS (solely as nominee for Lender and
> Lender's successors and assigns) and the successors and assigns of
> MERS, with power of sale, [the Property].

> TO HAVE AND TO HOLD this property unto MERS (solely
> as nominee for Lender and Lender's successors and assigns) and to
> the successors and assigns of MERS . . . .  Borrower understands and
> agrees that MERS holds only legal title to the interests granted by
> Borrower in this Security Instrument, but, if necessary to comply with
> law or custom, MERS (as nominee for Lender and Lender's
> successors and assigns) has the right: to exercise any or all of those
> interests, including, but not limited to, the right to foreclose and sell
> the Property; and to take any action required of Lender including, but
> not limited to, releasing and canceling this Security Instrument.

> . . .

> **13.  Joint and Several Liability; Co-signers; Successors and
> Assigns Bound**. . . . The covenants and agreements of this Security
> Instrument shall bind (except as provided in Section 20) and benefit
> the successors and assigns of Lender.

> . . .

> **20.  Sale of Note; Change of Loan Servicer; Notice of Grievance**.
> The Note or a partial interest in the Note (together with this Security

Instrument) can be sold one or more times without prior notice to the Borrower.

. . .

**22.  Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law.  Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.

. . .

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale . . . .

. . .

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.

Id. at 1-3, 11, 12, 14.  By the terms of the Security Instrument, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of the interests conveyed by Howard to MERS, including the right to foreclose on the Property.

At the time of foreclosure, E-Trade was the Note Holder, and the Note provides that the Security Instrument also protects the Note Holder.  [31.13 at 4-5]. Thus, MERS held the Security Instrument, with the power of sale, as nominee for E-Trade, the assign of Quicken Loans.

In September 2008, Plaintiff defaulted on his loan obligations.  [1.1 at 68; 31.12 at ¶ 7].  On June 5, 2009, McCurdy & Candler sent Plaintiff an Initial Communication Letter and Notice of Foreclosure Sale advising Plaintiff that he was in default and the Property would be sold at foreclosure on July 7, 2009.  [1.1 at 78-79].

On July 30, 2009, McCurdy & Candler sent Plaintiff another Initial Communication Letter [30.5] and Notice of Foreclosure Sale [30.6], with a September 1, 2009, foreclosure date.  On June 26, 2009, Plaintiff filed a lawsuit in state court, which was dismissed on January 13, 2010.  Foreclosure proceedings were postponed while that case was pending.

On January 22, 2010, Plaintiff sent a Qualified Written Request to GMAC requesting information on GMAC "Account/Loan # 0354539633."  [30.15].  On February 3, 2010, E-Trade replied to Plaintiff's letter with information about the account number he requested.  [30.16].  E-Trade attached documents including a

copy of the account's payment history evidencing Plaintiff's default, and a copy of

the Note and Security Instrument.  The letter also provided:

> The current Master Servicer is: E-Trade Savings Bank.  The Loan is
> currently owned by: E-Trade Savings Bank.  However, the loan is
> currently being subservicer by E-Trade Financial and all legal
> inquiries should be directed to the subservicer.
>
> . . . GMAC Mortgage has responded to the provisions it is required to
> as provided by law.

Id.  On February 17, 2010, Plaintiff sent E-Trade a Second Qualified Written

Request, requesting more of the same vague information.  [30.17].  On March 3,

2010, E-Trade responded that it had sent Plaintiff the relevant requested

information, and that GMAC had responded as required by law.  [30.18].

On April 2, 2010, McCurdy & Candler sent Plaintiff another Initial

Communication Letter [30.7] and Notice of Foreclosure Sale [30.9] advising

Plaintiff that his loan, number 0354539633, was in default and foreclosure was

scheduled for May 4, 2010.  The Notice of Sale Under Power,[2] attached to the

Notice of Foreclosure Sale and as published,[3] provides:

> Because of default in the payment of the indebtedness, secured by a
> Security Deed executed by Matthew W. Howard to [MERS] dated

---

[2]  Plaintiff consistently in this litigation challenged the standing of MERS to
prosecute the foreclosure and objects to the notice which he received only to the
extent that MERS has standing to prosecute the foreclosure.

[3]  The Notice of Foreclosure Sale was published in the Cherokee Tribune on
April 9, 16, 23, and 30, 2010.  [31.8].

January 19, 2005 in the amount of $132,000.00 . . . the undersigned, [MERS] pursuant to said deed and the note thereby secured, has declared the entire amount of said indebtedness due and payable and pursuant to the power of sale contained in said deed, will [sell the Property at foreclosure].

[31.8; 31.9 at 4].  On May 4, 2010, MERS sold the Property at foreclosure and executed the Foreclosure Deed, as attorney-in-fact for Plaintiff, in favor of GMAC. [30.11].

      B.    <u>Procedural History</u>

On April 22, 2010, Plaintiff filed this action in the Superior Court of Cherokee County, Georgia.  In his initial Complaint, Plaintiff alleged that the Defendants lacked legal standing to foreclose on the Property because MERS did not hold both the Note and Security Deed.  On May 6, 2010, two days after the Property was sold at a foreclosure sale, Plaintiff filed in state court a Motion to Set Aside Unlawful Foreclosure and Security Deed.

On May 26, 2010, Defendants removed the state court action to this Court on the basis of diversity jurisdiction.  In June 2010, Plaintiff moved to enjoin eviction proceedings, to remand the action, and to amend his complaint.

On October 15, 2010, the Court denied Plaintiff's motions to set aside the foreclosure, for injunctive relief, to remand, and to amend his initial complaint. The Court expressly rejected Plaintiff's argument that MERS does not have

standing to initiate foreclosure proceedings.  The Court found that "[t]he Security Deed in this case states: 'MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.'"  [18 at 4].  The Court held: "MERS, as a nominee of a lender, lawfully initiated foreclosure proceedings against Plaintiff's property."  Id.

On November 12, 2010, Plaintiff for the second time moved to amend his complaint to include, *inter alia*, more allegations that MERS lacked standing to foreclose on the Property.  On January 21, 2011, the Court again informed Plaintiff that his claim that MERS lacked standing to foreclose on the Property was meritless, and that his only potentially viable claim identifiable from his pleadings was that the Foreclosure Deed allegedly contained fraudulent statements.  The Court granted Plaintiff leave to amend his complaint to state his fraud claim with the required particularity.

On February 3, 2011, Plaintiff filed his First Amended Complaint [25], alleging: (1) Wrongful Foreclosure as a Matter of Law; (2) Wrongful Foreclosure as a Tort; (3) Equitable Relief; (4) Punitive Damages; and (5) Legal Fees.  Plaintiff again based his claims on his position that MERS lacked standing to foreclose on the Property.  Plaintiff alleged also that the statements in the Foreclosure Deed that

MERS was acting as Plaintiff's "duly appointed agent and attorney-in-fact" and that the Security Deed was executed to MERS, were both false.  [25 at ¶¶ 109, 110].  Plaintiff argued that, because MERS and GMAC have not shown possession of the underlying Loan documents, they could not have experienced a default which could be enforced by the Security Deed.  Id. ¶ 111.

On April 18, 2011, Plaintiff filed a voluntary petition for Chapter 7 Bankruptcy.  In re Howard, 11-61704-mhm (Bankr. N.D. Ga.).  On August 4, 2011, Howard was granted a discharge.

On July 1, 2011, Defendants moved for summary judgment.  Defendants presented that the undisputed facts were that Plaintiff had executed the Security Deed in favor of MERS and that Plaintiff defaulted on the underlying Loan. Defendants argued that MERS was entitled to exercise the power of sale contained in the Security Deed upon Plaintiff's default, that the foreclosure sale complied with Georgia law, and that the Foreclosure Deed was valid.  On July 19, 2011, Plaintiff submitted his statement of material facts consisting of conclusory legal assertions, which failed to allege any facts relevant to his fraud claim.

On September 12, 2011, the Court granted summary judgment for Defendants.  The Court found that Defendants had submitted evidence showing that the statements upon which Plaintiff based his fraud claim were in fact true, and

that Plaintiff had failed to present any evidence that would contradict these statements under a valid legal theory.  The Court found that Defendants had demonstrated, and Plaintiff had failed to contradict, that Plaintiff defaulted on the Loan, and that the Security Deed provided MERS a security interest allowing it to foreclose on the Property in the event of Plaintiff's default.

On September 19, 2011, Plaintiff moved for reconsideration [39] of the Court's September 12th Order.  Plaintiff asserts that MERS lacked standing to foreclose on the Property, and that the Foreclosure Deed is defective.  Plaintiff argues that the Court "has made the erroneous ruling that MERS has the right to foreclose . . . based on cases that are not relevant to the instant case," and that the Foreclosure Deed is not valid because it was signed by Jeffrey Stephan, whom Plaintiff asserts is an alleged "robosigner" based statements Stephan made during depositions conducted in two cases unrelated to this action.

## II.   DISCUSSION

### A.   Legal Standard

Federal Rules of Civil Procedure 59(e) and 60(b) permit the Court to alter or amend judgments or provide a party relief from a judgment or order.  The Court does not reconsider its orders as a matter of routine practice.  LR 7.2 E., NDGa. The Court's Local Rules require the parties file any such motions for

reconsideration "within twenty-eight (28) days after entry of the order or judgment." Id.

A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996). A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

B.    Whether MERS Lacked Standing to Foreclose

Plaintiff's claims are based on his argument that MERS lacked standing to foreclose on the Property because MERS did not also hold the Note. Plaintiff asserts that, in light of Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370 (N.D. Ga. 2011), the Court must reexamine its position that a nominee of a

11

lender, such as MERS, has the legal right to foreclose on a debtor's property.  The Court disagrees.

In <u>Morgan</u>, the plaintiff obtained a residential mortgage loan from Guaranteed Rate, and executed a security deed to real property in favor of MERS, as nominee for Guaranteed Rate.  Guaranteed Rate transferred the note to Taylor, Bean & Whitaker.  795 F. Supp. 2d at 1374.  MERS later assigned the security deed to Ocwen, the loan servicer, who initiated foreclosure proceedings on the property.  <u>Id.</u>  The plaintiff brought suit for wrongful foreclosure, quiet title, and other state law claims, based, in part, on his argument that Ocwen could not foreclose on the property without also holding the note.  <u>Id.</u> at 1372.  The Court held that the plaintiff had alleged facts sufficient to support a claim for wrongful foreclosure where he alleged that Ocwen, the loan servicer, published the foreclosure notice where it did not appear to be the holder of the note and did not purport to be acting as an agent for the actual holder of the note.  <u>Id.</u> at 1376.  The Court did not reach the question of whether an agent for the holder of the debt can conduct a power of sale foreclosure under Georgia law.  <u>Id.</u> at 1376-1377.[4]

---

[4]  The Court in <u>Morgan</u> stated that it need not address the question of agency because the plaintiff alleged that Ocwen did not advertise the foreclosure as agent for any disclosed principal.  <u>Id.</u> at 1376-1377.  Here, it is clear from the Security Instrument that Plaintiff could not have been misinformed about MERS' role as nominee for the lender and lender's successors and assigns.

Here, unlike in <u>Morgan</u>, MERS initiated foreclosure proceedings under the Security Instrument as the agent for E-Trade, the Note Holder.  The undisputed facts are that Plaintiff executed the Security Deed with the power of sale in favor of MERS, as nominee for Quicken Loans and its successors and assigns, to secure repayment of his loan obligations; that Quicken Loans assigned the Note to E-Trade; and that Plaintiff defaulted on his loan obligations.  The Note and the Security Deed clearly provide that the Note may be sold and that MERS would remain the assignee of any subsequent Note Holder.  Thus, MERS held the Security Deed as nominee for E-Trade, the assignee of Quicken Loans.  The Security Deed discloses no intent on the part of Plaintiff to restrict MERS from selling the Property if Plaintiff defaulted on his loan obligations.[5]  <u>See</u> Ga. Code Ann. § 23-2-114.  Plaintiff's argument is thus precluded by the plain language of

---

[5]  Section 114 provides:

> Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised.  . . .  Unless the instrument creating the power specifically provides to the contrary, a personal representative, heir, heirs, legatee, devisee, or successor of the grantee in a mortgage, deed of trust, deed to secure debt, bill of sale to secure debt, or other like instrument, or an assignee thereof, or his personal representative, heir, heirs, legatee, devisee, or successor may exercise any power therein contained; and such powers may so be exercised regardless of whether or not the transfer specifically includes the powers or conveys title to the property described.

Ga. Code Ann. § 23-2-114.

the Security Deed by which Plaintiff unequivocally granted to MERS the "right to foreclose and sell the Property" in the event of Plaintiff's default.  See Rainey v. FMF Capital, LLC, No. 1:11-cv-0364-CAP (N.D. Ga. Mar. 30, 2012) (dismissing wrongful foreclosure claim to the extent it is premised on MERS's lack of power to foreclose on its own); Alexis v. Mortg. Elec. Registration Sys., Inc., No. 1:11-cv-1967-RWS, 2012 WL 716161 at *3-4 (N.D. Ga. Mar. 5, 2012); Warque v. Taylor, Bean & Whitaker Mortg. Corp., No. 1:09-cv-1906-ODE-CCH, 2010 U.S. Dist. LEXIS 1421119 (N.D. Ga. Aug. 18, 2010) (N.D. Ga. Aug. 18, 2010) (declining to certify to Georgia Supreme Court whether MERS has power to foreclose under security deed because question is not relevant where security deed expressly granted MERS the power to foreclose on the property); Gordon v. S. Cent. Farm Credit, ACA, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994) ("Under Georgia law, it is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.").  Morgan does not hold otherwise.[6]

---

[6]     Plaintiff also argues that two cases, Nicholson v. OneWest Bank, No. 1:10 cv-0795-JEC-AJB, 2010 WL 2732325 (N.D. Ga. Apr. 20, 2010) (Baverman, M.J.) adopted at 2010 WL 2732329 (N.D. Ga. June 7, 2010) (Carnes, J.), and Trent v. Mortg. Elec. Registration Sys., Inc., 288 F. App'x 571 (11th Cir. 2008) (per curium), upon which the Court relied in its September 12th Order, "are not relevant to this case."  The Court notes that Plaintiff's criticism of Nicholson

and <u>Trent</u> are taken from a footnote in <u>Morgan</u> and Plaintiff fails to meaningfully develop this argument.

     Plaintiff's characterization of <u>Nicholson</u> is only half-accurate.  The plaintiff in <u>Nicholson</u> moved for a temporary restraining order to enjoin OneWest from foreclosing on her home because, she alleged, it was not the holder of the note and was not owed any money by plaintiff.  2010 WL 2732325 at * 2.  OneWest presented evidence that plaintiff had executed the security deed in favor of MERS, that MERS had assigned the security deed to OneWest, and by its terms, the assignment also transferred "the indebtedness described in said Deed and secured thereby."  <u>Id.</u> at *3-4.  The plaintiff presented a printout from Fannie Mae's website purporting to show that Fannie Mae, at one point, may have had some sort of interest in plaintiff's mortgage, but which printout also indicated that "Fannie Mae makes no representation or completeness of the results" of the search provided.  <u>Id.</u> at *4.  The Court found that such evidence was insufficient to overcome OneWest's showing that it held both the note and security deed.  <u>Id.</u>  The Court also rejected plaintiff's additional argument that the security deed was rendered unenforceable when it was transferred to MERS without the note and held that the nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the note secured by the security deed.  <u>Id.</u>  The Court also found that, to the extent the note and security deed were separated, it appeared that such defect had been cured by OneWest.  <u>Id.</u>  Plaintiff ignores the additional holding of <u>Nicholson</u>.

     Plaintiff argues that <u>Trent</u> interprets Florida law and as such does not apply here.  In <u>Trent</u>, debtors filed a class action claim alleging that MERS had violated Florida law by filing foreclosure actions without legal authority and that MERS sent them deceptive foreclosure notices which misidentified MERS as a "creditor."  288 F. App'x at 572.  The court held that

> [u]nder the mortgage contracts, [MERS] has the legal right to foreclose on the debtors' property.  MERS is the mortgagee.  The notices sent to the debtors restated information from the mortgage contracts and were not likely to mislead even the least-sophisticated debtor.

<u>Id.</u>  The court found that MERS had the authority to foreclose under the contracts, not as matter of Florida law.  Like in <u>Trent</u>, the language of the Security Instrument provides that MERS has the legal right to foreclose on the Property.

     Plaintiff relies on <u>In re Agard</u>, 444 B.R. 231 (Bankr. E.D.N.Y. 2011) <u>vacated in part sub nom.</u> <u>Agard v. Select Portfolio Serv., Inc.</u>, BR 8-10-77338 REG, 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012), <u>Landmark Nat'l Bank v. Kesler,</u>

Even if there were a question of whether MERS had standing to foreclose on the Property, which there is not, Defendants are still entitled to summary judgment on Plaintiff's claim for wrongful foreclosure. To support a claim for wrongful foreclosure under Georgia law, a plaintiff must establish: (1) the foreclosing party owes a legal duty to the plaintiff; (2) breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages. All Fleet Refinishing, Inc. v. West Georgia Nat'l Bank, 634 S.E. 2d 802, 807 (Ga. Ct. App. 2006). "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose." DeGoyler v. Green Tree Serv., LLC, 662 S.E. 2d 141, 147 (Ga. Ct. App. 2008) (quoting Brown v. Freedman, 474 S.E. 2d 73, 75 (Ga. Ct. App. 1996)). Failure to make the proper loan payments defeats any wrongful foreclosure claim. See Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E. 2d 842 (Ga. Ct. App. 2004) (plaintiff's injury was "solely attributable to its own acts or omissions both before

---

216 P. 3d 158, 167 (Kan. 2009), and Bellistri v. Ocwen Loan Serv., LLC, 284 S.W. 3d 619, 624 (Mo. Ct. App. 2009), to support his argument that MERS lacks standing to foreclose. Georgia courts have found that these cases apply issues of state law in jurisdictions outside Georgia and therefore do not apply in actions asserting wrongful foreclosure under Georgia law. See, e.g., In re Bryant, 452 B.R. 876 (Bankr. S.D. Ga. 2011); Barley v. Everhome Mortg. Co., No. 1:10-cv-4036-WSD (N.D. Ga. Apr. 26, 2011); In re Corley, 447 B.R. 375 (Bankr. S.D. Ga. 2011). These cases are cited in Morgan only to demonstrate that other courts have also struggled with the role of MERS in foreclosure proceedings in other jurisdictions.

and after the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale).

Here, the undisputed evidence is that Plaintiff defaulted on his loan obligations and failed to cure the default before foreclosure.  Plaintiff thus cannot show causation because any alleged injury was solely attributable to his own actions.  See, e.g., Warque v. Taylor, Bean, & Whitaker Mortg. Corp., No. 1:09-cv-1906-ODE-CCH, 2010 U.S. Dist. LEXIS 142129, at *14-15 (N.D. Ga. July 30, 2010) (Hagy, M.J.) (citing Heritage Creek, 601 S.E.2d at 845) (finding causation not established where plaintiff had failed to make payments on loan), adopted at 2010 U.S. Dist. LEXIS 1421119 (N.D. Ga. Aug. 18, 2010) (Evans, J.); cf. Taylor v. Wachovia Mortg. Corp., No. 1:07-cv-2671-TWT, 2009 WL 249353, at *5 n.6 (N.D. Ga. Jan. 30, 2009) (Thrash, J., adopting Vineyard, M.J.) ("Plaintiff has not provided any evidence showing that he tendered the full amount of the loan or any portion thereof.  Thus, under Georgia law, plaintiff has no standing to bring an action to enjoin the foreclosure sale.").  Defendants were entitled to summary judgment on Plaintiff's claim that MERS lacked standing to foreclosure on the

Property for this additional reason.[7]  Plaintiff's Motion for Reconsideration of

MERS' standing to foreclose on the Property is denied.

      C.    <u>Validity of the Foreclosure Deed</u>

      Plaintiff reasserts also that the Foreclosure Deed is not valid because it was

signed by Jeffrey Stephan, a purported "robosigner."  Plaintiff relies again on

depositions in cases unrelated to this action in which Stephan allegedly admits to

signing documents without appearing before a notary and without knowledge of

their contents.  The Court has already considered and rejected Plaintiff's argument

in its September 12th Order.  Stephan's statements do not relate to the Foreclosure

Deed at issue in this case.  That Plaintiff now submits the full transcripts of these

depositions, which he also summarized in his Amended Complaint, does not

---

[7]  Plaintiff's grievance is that MERS simply did not have authority to initiate or pursue the foreclosure action.  That this is his focus is underscored by the claim in his Amended Complaint that MERS did not even have the authority to send the foreclosure notice under its delegation of authority in the Security Deed.  [25 at ¶ 126].  It is well-established that a foreclosure notice sent by a loan servicer or agent of the secured party, such as exists here, is not defective under Ga. Code. Ann. § 44-14-162 <u>et seq.</u>  <u>See, e.g.</u>, <u>Alexis v. Mortg. Elec. Registration Sys., Inc.</u>, No. 1:11-cv-1967-RWS, 2012 WL 716161, at *4, n.7 (N.D. Ga. Mar. 5, 2012) (notice received by plaintiff not deficient merely because it was sent by loan servicer and agent of secured creditor; plaintiff did not allege notice failed to properly identify the secured creditor); <u>Lacosta v. McCalla Raymer, LLC</u>, No. 1:10-cv-1171-RWS, 2011 WL 166902, at *3-4 (N.D. Ga. Jan. 18, 2011) ("The goal of Section 162 is to give the debtor notice of the foreclosure sale.  Whether that notice is provided by the secured creditor directly, or by its agent, is of no consequence.").

constitute "newly discovered evidence" and further does not affect the Court's findings in its September 12th Order that Plaintiff failed to identify any false statement in the Foreclosure Deed.  Defendants were entitled to summary judgment on Plaintiff's claim that the Foreclosure Deed contains fraudulent statements.  Plaintiff's Motion for Reconsideration is denied on this issue.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Matthew W. Howard's Motion for Reconsideration [39] is **DENIED**.


**SO ORDERED** this 17th day of August, 2012.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE